Pennington, J.
— The case is shortly this. Jn July, 1805, Hopkins executed a bond and warrant of attorney tq Mood; about four years afterwards, Hopkins dies; and on the fourth or fifth day thereafter, Mood enters up a judgment on this' warrant of attorney, and takes out execution against the goods and chattels, and lands of Hopkins. The question is, whether of not this is a legal proceeding? It is true that our statute, Pat. 556, declares that warrants of htttorney to confess judgments, shall not be reyokeable by the party making them; but’ this is no more than the course of adjudications had before, established. [*] But although á party cannot revoke such warrants of attorney made by himself, yet his death determines the authority; and was tliis a new question, I should have had ho hesitation in saying that the'act of entering up judgment after the death of Hopkins, was a vpid act. But this question has undergone a judicial investigation, and been determined the other WTay. It having become a course of the Court tp enter up judgment on warrants of attorney tq confess judgment in vacation, as of the preceding term, it bpppjhés a judgment pf that terrq; and this being while the defendant is living, the judgment is considered' as regular. The case óf Oades v. Woodward, 1 Ann, reported in 7 Mod. 2 Ld. Ray , and other books, established the practice, the same if the defendant dies in term time ; a judgment entered up after his death, has re *509 lation to the first day of the term; 2 Stra. 882, 1080. 3 P. Wil. 399. Barnes 270. In Fuller v. Jocelyn, 2 Stra. 882, the Court said that the case of Oades v. Woodward, was not to be got over. These cases are authority with us, being all before the revolution ; and I think, would govern the case under consideration, did not the statute for the distribution of the estates of persons who die, not having sufficient property to pay all their just debts, Pat. 435, press upon my mind a different view of the subject. This statute puts an end to the shameful scramble and frauds formerly practised by creditors to obtain priority in their demands, by laying down a reasonable rule, that all shall be paid in proportion to their respective dues, excepting out of this rule, physician’s bill during the last sickness, funeral expenses, judgments and mortgages. But as to judgments the statute uses this cautious and explicit language; judgments that have been obtained and entered of record during the life of the defendant. No words could be better adapted to shutout judgments by relation than those here made use of. The judgment in the pase under consideration hath not been obtained and [*] entered of record during the life of the intestate. By suffering it fo hav.e relation to the preceding term, and considering it ast a judgment of that term, would be (in case of the insolvency of the estate, which is suggested by the administrators) defeating the pro raía rule laid down by the statute, by a mere fiction of law. It is a well known rule of law, that fictions shall not be permitted tp work a wrong or do injustice; nor can a court, xn my opinion, with propriety, permit a fiction of law to destroy the operation of a statute, founded on the plainest principles of justice. In the cases in English books, the courts went on the ground that no injury or injustice would resultfrom allowing the fiction of relation to prevail. Under the old law, it was a mere struggle among the creditors, for priority ; and the law was indifferent whether A or B succeeded. But under our statute, the moment a person dies, liis creditors are put on a footing, unless in a fexv excepted cases, and obtain vested rights. If these rights can be impaired by fiction and relation, these fictions are permitted to wox*k a wrong and do injustice, contrary npt only to the most obvious principles pf reaspn, but to a sound maxim of law.
In case the estate of Hopkins is solvent, the plaintiff suffers np other evil from this decision, than the usual delay of collecting debts from executors or administrators; and this he has bx*ought on himself by his own neglect in not entering up his judgment in the life time of the intestate. On the other hand, iix pase of a deficiency of assets to pay all the debts, it would not only be a violation of the satute, but *510 against reason and justice, to permit the plaintiff, by a secret instrument, kept four years in his pocket, to crowd out all the other creditors: I am, therefore, of opinion that the judgment and execution ought to be set aside.
By the Court.
Let the judgment and execution in this case, be ■ . Set aside, (a)

 This decision was affirmed in the Court of Appeals. S. P. Halst. 93.